FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**October 25, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HUNTER ISAIAH HOBBS,

    Defendant - Appellant.

No. 23-5113
(D.C. No. 4:21-CR-00233-GKF-2)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Defendant-Appellant Hunter Hobbs was convicted following a five-day jury trial of seven counts related to an attempted carjacking and felony murder in Indian country.[1] He was sentenced to life imprisonment and five years' supervised release. On appeal, Mr. Hobbs contends that the district court plainly erred when it allowed (1) a prosecution

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The counts include: Counts 1 & 4, conspiracy to carry, use, and brandish a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(o); Count 2, attempted carjacking, 18 U.S.C. §§ 2119(2) & 2; Count 5, robbery in Indian Country, 18 U.S.C. §§ 1151, 1152, 1153, 2111 & 2; Count 6, felony murder in Indian Country, 18 U.S.C. §§ 924(j)(1) & 2; Count 7, causing death by carrying, using and discharging a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 1512(a)(1)(C), (a)(3)(A) & 2; and Count 8, obstruction of justice by killing a victim in violation of 18 U.S.C. §§ 1512(a)(1)(C), (a)(3)(A) & 2. I R. 529.

witness to testify that Mr. Hobbs mocked a victim's dying breath and to reenact it, and (2) improper remarks by the prosecution urging the jury to convict so as to show Mr. Hobbs that his actions have consequences.  Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

The parties are familiar with the facts, and we need not restate them at length here.  Suffice it to say that on May 8, 2021, Mr. Hobbs and his friend Denim Blount[2] shot at an innocent stranger while attempting to steal his car.  III R. 281–304.  A few days later, the two decided to rob Caleb Collier and Kelly Davis and kill them to stop them from reporting the crime.  Id. at 314–18.  Mr. Hobbs and Mr. Blount tricked the victims into driving to Haikey Creek Park.  Id. at 317–18, 322–330.  Mr. Hobbs shot Mr. Collier 15 times and Mr. Blount shot Mr. Davis several times; the victims died from their injuries.  Id. at 326–28; I R. 37.  Mr. Hobbs and Mr. Blount then absconded with the victims' car, handgun, and cell phones, attempting to hide their involvement in the crimes.  III R. 330–31, 590–93.  Other pertinent facts will be stated as we address the specific contentions on appeal.

---

[2] Mr. Blount agreed to cooperate with the government and became the prosecution's key witness at Mr. Hobbs's trial.  Aplee. Br. at 3.

**Discussion**

**1.  Reenactment to Illustrate Testimony**

Mr. Hobbs first argues that the district court plainly erred by allowing his former fiancée, Moriah Darden, to testify that he mocked a victim's dying breath and to reenact it.  Aplt. Br. at 21.  He maintains that the testimony should have been excluded under Rule 403 of the Federal Rules of Evidence.  Id.  Ordinarily, our review would be for an abuse of discretion, but absent objection, our review of this unpreserved Rule 403 claim is for plain error.  See United States v. Ibarra-Diaz, 805 F.3d 908, 928 (10th Cir. 2015).

Ms. Darden testified that on the night of the murder, she was with Mr. Hobbs and Mr. Blount before they left with their guns, advising that they were going to meet the eventual victims.  III R. 425–26.  Ms. Darden noted that Mr. Hobbs was adamant that she could not join them, which she found unusual.  Id. at 426–27.

According to Ms. Darden, when Mr. Hobbs returned later that evening, he told her about killing the victim, Mr. Collier.  Id. at 427.  Specifically, Ms. Darden testified that Mr. Hobbs mimicked the victim's dying breath in a joking yet serious manner by acting as if he was gasping on air.  Id. at 427–29.  She described Mr. Hobbs's mocking as "raspy and cold" and then, at the prosecution's direction, she reenacted Mr. Hobbs's imitation of Mr. Collier's dying breaths.  Id. at 428.  Defense counsel did not object to Ms. Darden's testimony.  Aplt. Br. at 21.

To prevail on plain error, Mr. Hobbs must show that "(1) an error occurred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error seriously

3

affected the fairness, integrity, or public reputation of a judicial proceeding." United States v. Cantu, 964 F.3d 924, 935 (10th Cir. 2020) (citation omitted). "An error is plain if it is clear or obvious under current, well-settled law of this court or the Supreme Court." Id. (citation omitted). A plain error affects substantial rights when "there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." United States v. Coulter, 57 F.4th 1168, 1178 (10th Cir. 2023) (citation omitted). "An appellant facing 'overwhelming evidence of his guilt' usually 'cannot establish a reasonable probability' that an alleged error 'affected the outcome of the trial.'" Id. (quoting Ibarra-Diaz, 805 F.3d at 926).

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Upon a proper objection, a district court has "considerable discretion in performing the Rule 403 balancing test[,]" and in reviewing such a ruling we give evidence "its maximum reasonable degree of relevance and its minimum reasonable danger of unfair prejudice." United States v. Herrera, 51 F.4th 1226, 1253 (10th Cir. 2022) (citations omitted). "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Merritt, 961 F.3d 1105, 1115 (10th Cir. 2020) (citation omitted) (emphasis in original).

The government stresses that Ms. Darden's testimony was probative of Mr. Hobbs's active and willing participation in the murder. Aplee. Br. at 15. Moreover, the

4

evidence corroborated the account of Mr. Blount and enhanced the credibility of Mr. Blount and Ms. Darden.  Id.  In United States v. Magallanez, we found no plain error where admitted evidence was probative because it "helped to corroborate" the testimony of other witnesses.  408 F.3d 672, 678 (10th Cir. 2005).  For his part, Mr. Hobbs concedes that Ms. Darden's testimony (including that Mr. Hobbs mimicked Mr. Collier's dying breaths) suggests that Mr. Hobbs was present to hear Mr. Collier's dying breaths and makes it more likely that Mr. Hobbs is the person that killed Mr. Collier.  Aplt. Br. at 25–26.  That is an important fact, particularly given Mr. Hobbs's defense that Mr. Blount, the prosecution's key witness, was lying.  See III R. 64–65.  But the evidence goes beyond that — it also supports Mr. Blount's specific description of events including Mr. Collier's "death groans."  Id. at 327; see also Magallanez, 408 F.3d at 678.  Mr. Hobbs continues that such evidence was unnecessary and of minimal probative value considering the testimony in the case, Aplt. Reply Br. at 1–6, but we think it is the government's call on how to try the case and address potential inferences from the testimony.  See Old Chief v. United States, 519 U.S. 172, 186–87 (1997) (reminding that "the prosecution is entitled to prove its case by evidence of its own choice").

The government also argues that the evidence is not unfairly prejudicial when considering all the other evidence of Mr. Hobbs's violence.  Aplee. Br. at 21; see also United States v. Brooks, 736 F.3d 921, 941 (10th Cir. 2013) (finding no unfair prejudice where, in light of other evidence, challenged evidence cast defendant "in only a marginally worse light than the one that otherwise would have shone upon him").  Importantly, the potential emotional response or adverse character inference against Mr.

5

Hobbs is not "wholly apart" from the jury's judgment as to his guilt of the crime charged. Merritt, 961 F.3d at 1115. Thus, we cannot say that the district court plainly erred when it allowed Ms. Darden's testimony.

Even if the court's failure to exclude Ms. Darden's testimony constituted error, Mr. Hobbs has not met his burden of demonstrating that such an error affected his substantial rights. See Cantu, 964 F.3d at 935. Mr. Hobbs argues that the government's case was weak as to the counts of robbery, felony murder, and obstruction of justice, and that Ms. Darden's testimony was so inflammatory that it induced the jury to convict him on those counts. Aplt. Br. at 33–38. In so arguing, Mr. Hobbs exaggerates the weakness of the government's case on these counts. To the contrary, there was strong evidence that the killings were committed as part of a robbery or to prevent the victims from reporting the crime. See, e.g., III R. 293, 252 (evidence that Mr. Hobbs attempted to eliminate evidence of his involvement in the murders); id. at 317 (testimony of Mr. Blount that he and Mr. Hobbs planned to rob the victims and kill them to avoid being caught); id. at 494, 532–37 (evidence linking Mr. Hobbs to the weapon used in the attempted carjacking and double murder); id. at 404–06 (testimony of Abigail Stallworth that Mr. Hobbs and Mr. Blount showed off handguns corroborating Mr. Blount's testimony that they stole Mr. Davis's 9mm handgun). Thus, "in light of the overwhelming evidence of his guilt," Mr. Hobbs cannot establish a "reasonable probability" that the admission of Ms. Darden's testimony affected the outcome of the trial. Ibarra-Diaz, 805 F.3d at 926.

## 2. Opening and Closing Statements

Mr. Hobbs also argues that the district court plainly erred by allowing the prosecution to make statements that characterized him as someone who thought his actions did not have consequences, thereby urging the jury to provide those consequences through a conviction. Aplt. Br. at 42–49. First, Mr. Hobbs points to the prosecution's opening statement, where it stated that Mr. Hobbs "thought he was living in a world without consequences . . . ." III R. 56. In its opening statement, the prosecution also previewed the evidence, which included Ms. Darden's testimony that Mr. Hobbs joked about the murder and mocked Mr. Collier's dying breaths. Id. at 63. The prosecution's opening statement concluded by asking the jury to "show [Mr. Hobbs] he's not living in a world without consequences and find him guilty of all charges." Id. at 64.

Mr. Hobbs also points to the prosecution's closing argument, where it again asserted that Mr. Hobbs believed he lived in "a world with no consequences." Id. at 633. In addressing the lack of a clear motive for Mr. Hobbs's crimes, the prosecution emphasized the violent nature of the crimes and again highlighted that Mr. Hobbs bragged about the murders which were, in the prosecution's words, "nothing more than a punchline to [Mr. Hobbs]." Id. at 635. The prosecution's closing argument summarized the evidence and concluded by asking the jury to again "[s]how the defendant there are consequences . . . . Hold him accountable and find him guilty of all charges." Id. at 640–51. Finally, in its rebuttal, the prosecution repeated that Mr. Hobbs mocked Mr. Collier's dying breaths and finished with, "Ladies and gentlemen, he was trying to be known as a

killer. Give that to him. Find him guilty on all counts." Id. at 669. Defense counsel did not object to these statements. Aplt. Br. at 43.

When defendant makes no prosecutorial misconduct objections at trial, our review is for plain error. United States v. Kepler, 74 F.4th 1292, 1315 (10th Cir. 2023). "When applying plain error review to prosecutorial misconduct claims, reversal is warranted only when: [1] the prosecutor's statement is plainly improper and [2] the defendant demonstrates that the improper statement affected his or her substantial rights." Id. (citations omitted). Prosecutors are "entitled to a reasonable amount of latitude" in making their arguments. United States v. Gregory, 54 F.4th 1183, 1211 (10th Cir. 2022) (citing United States v. Hammers, 942 F.3d 1001, 1016 (10th Cir. 2019)). A prosecutor's "[a]rguments may be forceful, colorful, or dramatic, without constituting reversible error" as long as those arguments are "supported by the facts and circumstances properly in evidence . . . ." Id. at 1210–11 (citation omitted). However, a prosecutor cannot "'distort [] the record by misstating the evidence,' or otherwise invite the jury to base its decision on irrelevant considerations." Kepler, 74 F.4th at 1316 (quoting United States v. Christy, 916 F.3d 814, 824–25 (10th Cir. 2019)).

In this case, the prosecution did not invite the jury to base its decision on any improper consideration when it urged the jury to show Mr. Hobbs that his actions have consequences. Unlike Mr. Hobbs's cited cases, the prosecution here did not suggest that Mr. Hobbs should be convicted for reasons other than his guilt of the specific offenses charged. Cf. United States v. Taylor, 514 F.3d 1092, 1095 (10th Cir. 2008) (finding prosecutorial misconduct where prosecutor urged the jury to "address societal ills" that

did not relate to whether the accused committed the crime); United States v. Rodgers, 556 F.3d 1130, 1143 (10th Cir. 2009) (reminding that "[p]rosecutors are not permitted to incite the passions of the jury by suggesting they can act as the 'community conscience' to society's problems").  Rather, this argument was the sort of "forceful" and "dramatic" rhetorical device that is not plainly improper when placed "in the context of the entire proceeding, including the strength of the evidence against the defendant."  Gregory, 54 F.4th at 1210–11.

Indeed, when viewed in context, the challenged statements came first with the prosecution's outline of the evidence that it would present to support the charges in its opening statement and later with its summary of how the evidence presented supported those charges during closing arguments.  See III R. 56–63; id. at 640–51.  Thus, the prosecution's statements did not misstate the evidence, but instead were "supported by the facts and circumstances properly in evidence[.]"  Gregory, 54 F.4th at 1211 (citation omitted).  Because these statements were not plainly improper, we need not consider whether they affected Mr. Hobbs's substantial rights.

Mr. Hobbs also argues on appeal that the cumulative impact of the district court's errors discussed above warrants a new trial.  Aplt. Br. at 48–51.  However, because neither Ms. Darden's testimony nor the prosecutor's statements constituted error, there is no cumulative error.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge